UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MARTINEZ,<br><br>        Plaintiff,<br><br>  v.<br><br>M. JIMENEZ, et al.,<br><br>        Defendants. | Case No. 1:23-cv-00177-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITH PREJUDICE<br><br>(ECF No. 9)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

William Martinez ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Plaintiff filed the complaint commencing this action on February 6, 2023. (ECF No. 1). Plaintiff alleges that he was subjected to a false RVR and an atypical and significant hardship because he threatened to file a 602 and because of his membership in the Northern Structure. On May 16, 2023, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 6). The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; or b. Notify the Court in writing that he wants to stand on his complaint." (Id. at 10). Plaintiff filed his First Amended Complaint on July 20, 2023. (ECF No. 9).

1

The Court has reviewed Plaintiff's First Amended Complaint, and for the reasons described in this order, will recommend that this action be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that

*pro se* complaints should continue to be liberally construed after Iqbal).

## II.     SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges as follows in his First Amended Complaint ("FAC").

On November 1, 2018, there was an incident on the prison yard. After the victim was taken from the prison yard, 6 suspects were cuffed and removed from the yard. Approximately 50 inmates were placed in flexy cuffs, which are plastic ties used to second inmates, and "proned out" on the ground while officers secured the crime scene, took photographs, and collected evidence.

Institutional Gang Investigator (IGI) M. Jimenez approached Plaintiff and said "Billy, what are you doing over here? . . . All the shotcallers are on the other side of the yard. You ought to be taken as well). Plaintiff responded that he had not done anything wrong. Plaintiff threatened to file a 602 grievance against IGI Jimenez. IGI Jimenez responded "So you think you're special because you're a Big Homie. But I'm the one who makes the decisions around here." Plaintiff believes the term "Big Homie" refers to Plaintiff's alleged Northern Structure (NS) affiliation and validation as part of a Hispanic Prison Gang. Plaintiff responded "You can't do that. That's discrimination." Plaintiff was searched and sent back to his cell.

The next day, IGI Jimenez put Plaintiff under arrest and placed him in Administrative Segregation.

Plaintiff has had multiple encounters with IGI Jimenez in the past. IGI Jimenez has searched Plaintiff's cell, confiscated his mail, and interrogated him because of Plaintiff's alleged NS affiliation.

Over 20 officers wrote reports about the incident, and the reports did not mention Plaintiff. However, IGI Jimenez submitted a false report against Plaintiff. The report was based on 1 of 3 recorded videos, which did not show Plaintiff being involved in this incident. Even though there were approximately 25-30 documented Northern Hispanic inmates in the vicinity, Plaintiff was the only validated Northern Structure member targeted by IGI Jimenez. Despite there being no real evidence against Plaintiff, IGI Jimenez falsified a report. As a result, Plaintiff was put in Administrative Segregation for over 485 days.

1   Several officers, including Disciplinary Senior Hearing Officer Lt. R. Siodia, Lieutenant J.G. Lopez, Correctional Captain R. Kuhn, and Correctional Lieutenant R. Redding all reviewed the evidence. Each of the officers had the obligation to protect Plaintiff's due process rights. Instead, they all allowed the erroneous report to stand, which resulted in Plaintiff being put in Administrative Segregation for 485 days. However, they released 4 of 6 other inmates who had been detained in Administrative Segregation, despite the fact that those other inmates had blood on their persons, and were photographed by the crime scene investigators.

Plaintiff believes he was put in Administrative Segregation because they believed he was a shot-caller of a prison gang. Plaintiff was also transferred to another institution.

Plaintiff brings three claims: retaliation in violation of the First Amendment, violation of the right to due process, and violation of the right to equal protection. He names as defendants M. Jimenez, J.G. Lopez, R. Redding, and R. Kuhn.

**III.     ANALYSIS OF PLAINTIFF'S COMPLAINT**

A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir.

4

2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the

moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Retaliation

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm,' *Brodheim*, 584 F.3d at 1269, that is 'more than minimal,' *Robinson*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id.* at 569." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

Plaintiff alleges that on November 1, 2018, after a victim was taken off the prison yard, IGI Jimenez accused him of being a shot-caller for a prison gang and said he should be put in Administrative Segregation. Plaintiff responded that he did nothing wrong and threatened to

file a 602 grievance against IGI Jimenez.  IGI Jimenez responded "So you think you're special because you're a Big Homie.  But I'm the one who makes decisions around here."  IGI Jimenez later filed an allegedly false report accusing Plaintiff of committing a crime against the victim based on a video, which Plaintiff claims did not show him being involved in the crime.

The Court finds that Plaintiff fails to state a retaliation claim under the First Amendment.  As to defendant Jimenez, while Plaintiff alleges that he threatened to file a 602 grievance against IGI Jimenez, Plaintiff does not sufficiently allege that defendant Jimenez subjected Plaintiff to false charges because of it.  According to Plaintiff's description of the events, IGI Jimenez had already accused Plaintiff of being involved in the crime even before Plaintiff said he would file a 602 against IGI Jimenez.  Also, Plaintiff does not allege that IGI Jimenez said anything to indicate he was accusing Plaintiff of the crime because Plaintiff said he would file a 602 grievance.  In fact, Plaintiff alleges that IGI Jimenez falsely reported that Plaintiff was involved in the crime because he believed Plaintiff was a shot-caller of a prison gang and not because Plaintiff had threatened to file a 602 against him.  Thus, even if Plaintiff's allegations are true, they would not establish a claim for retaliation in violation of the First Amendment based on Plaintiff saying he would file a 602 grievance.

To the extent Plaintiff alleges that IGI Jimenez filed the report against Plaintiff because Plaintiff was allegedly part of the NS prison gang, this would also not state a claim for retaliation under the First Amendment because being part of a prison gang is not constitutionally protected conduct.  Thus, even if IGI Jimenez filed charges against Plaintiff due to his alleged gang affiliation, this would not be retaliation against Plaintiff for exercise of a constitutional right.

The Court also finds that Plaintiff fails to state a retaliation claim against the supervisory defendants.  There are no allegations suggesting that these defendants retaliated against Plaintiff for engaging in protected conduct.

\\\
\\\
\\\

C. Procedural Due Process[1]

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

The United States Supreme Court, in a case involving a disciplinary proceeding that resulted in a punishment of thirty days in solitary confinement, held that while States may create liberty interests, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). In Sandin, the Supreme Court held that neither thirty days in solitary confinement nor issuance of a Rules Violation Report that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural due process protections.

Even if a liberty interest is at stake, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare

---

[1] Plaintiff mentions the Eighth Amendment, but as discussed below, it is the Fourteenth Amendment that prevents prison officials from subjecting an inmate to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life without providing due process.

8

for the appearance before the [disciplinary committee]." Id.  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566.  And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.  Additionally, "some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985).  The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ." Id. at 455-56.

Plaintiff alleges that he was punished by being put in administrative segregation for 18 months.  The Court finds that, for screening purposes, Plaintiff sufficiently alleges that he was subjected to an atypical and significant hardship in relation to the ordinary incidents of prison life.

However, Plaintiff does not sufficiently allege that he was not provided with due process of law.  Despite being informed of the procedural requirements in the Court's first screening order, Plaintiff's FAC does not allege that any of these procedural requirements were violated.  Plaintiff alleges that numerous officers viewed the evidence and erroneously concluded that Plaintiff was involved in the crime, but Plaintiff does not describe the actual hearing that resulted in the Administrative Segregation.  (Nor does he claim that he failed to receive any hearing).  Instead, Plaintiff appears to allege that the hearing officers violated procedural due process merely because they incorrectly concluded that Plaintiff was involved in a crime.  But this alone does not state a violation of procedural due process.

Accordingly, the Court finds that Plaintiff fails to state a procedural due process claim

against any defendant.

### D. Equal Protection

The equal protection clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, Hartmann, 707 F.3d at 1123 Furnace, 705 F.3d at 1030, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008), Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008), North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff appears to allege that he was treated differently because of his membership in the NS gang. He supports this allegation by explaining that IGI Jimenez initially investigated him based on his belief that Plaintiff was a shot-caller in a prison gang. However, prison gang members are not a protected class in the same way that classes such as race and gender are. Indeed, whether someone is a shot-caller for a prison gang is rationally related to the legitimate state purpose of evaluating potential suspects for a prison crime. Moreover, Plaintiff's allegations do not indicate that he was found guilty of the crime solely on the basis of his alleged gang membership. Instead, Plaintiff alleges that IGI Jiminez relied on a video, and that various evidence was reviewed by the hearing officers. While Plaintiff disagrees with their evaluation of that evidence, Plaintiff's allegations do not state a claim for equal protection based on being a member of the NS gang.

Additionally, his allegations that he was treated differently because of his membership in the Northern Structure are conclusory. There are no allegations, such as anything a

defendant said or did, suggesting that Plaintiff was treated differently because of his membership in the Northern Structure. Plaintiff does allege, in a conclusory fashion, that there is a "practice" of discrimination against NS members, but there are no factual allegations suggesting that any other members of NS were treated differently because of their NS membership.

Accordingly, the Court finds that Plaintiff fails to state an equal protection claim against any defendant.

### IV.     CONCLUSIONS, ORDER, AND RECOMMENDATIONS

The Court recommends dismissing Plaintiff's case with prejudice based on failure to state a claim. Moreover, the Court does not recommend further leave to amend. The Court previously screened Plaintiff's complaint and provided analysis and legal standards. Plaintiff has filed an amended complaint with the benefit of the Court's screening order; however, Plaintiff's complaint still fails to state a cognizable claim.

Accordingly, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

And IT IS RECOMMENDED as follows:

1. This case be dismissed, with prejudice, for failure to state a claim.
2. The Clerk of Court be directed to close this action.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\
\\\
\\\
\\\

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 15, 2023**                          /s/ Erica P. Grosjean
                                                                UNITED STATES MAGISTRATE JUDGE